1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JULIET B. HALEY, State Bar No. 162823
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5960
     Fax:  (415) 703-1234
8    Email:  Juliet.Haley@doj.ca.gov

9  Attorneys for Respondent

10            IN THE UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13
   SAINT DEJUAN MOORE,                          C 07-04736  JSW
14
                              Petitioner,
15
            v.
16
   BEN CURRY, Warden,
17
                              Respondent.
18

19
       MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER
20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3  STATEMENT OF THE CASE                                                    1

4  STATEMENT OF FACTS                                                       2

5  STANDARD OF REVIEW                                                       4

6  ARGUMENT                                                                 5

7      I.    THE STATE COURT'S REJECTION OF PETITIONER'S
             CLAIM OF *GRIFFIN* ERROR WAS NOT OBJECTIVELY
8            UNREASONABLE                                                   5

9            A.   State Court's Analysis Of The Claim                      6

10           B.   Petitioner Has Failed To Establish That The State Court's Rejection Of The
                  Claim Was An Unreasonable Application Of Griffin         7

11
       II.   ANY  ERROR  IN  THE  PROSECUTOR'S  COMMENT
12           REGARDING THE PRESUMPTION OF INNOCENCE WAS
             WAIVED BY PETITIONER'S FAILURE TO OBJECT AND WAS
13           NOT IN ANY EVENT IMPROPER OR DENY PETITIONER
             DUE PROCESS                                                    9
14
             A.   The State Court's Finding That The Remark Did Not Lower The Burden Of
15                Proof Was Not Objectively Unreasonable                   10

16     III.  THE STATE COURT REASONABLY CONCLUDED THAT THE
             PROSECUTOR'S ARGUMENT WAS PROPER                             12
17
             A.   Factual Background                                      12
18
       IV.   THE  STATE  COURT  WAS  NOT  UNREASONABLE  IN
19           CONCLUDING THAT THE COURT'S PROMPT ADMONITION
             CURED ANY HARM                                               13
20
   CONCLUSION                                                             16
21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. United States*
164 U.S. 492 (1896)     11

*Babbitt v. Calderon*
151 F.3d 1170 (9th Cir. 1998)     8

*Bashor v. Risley*
730 F.2d 1228 (9th Cir. 1984)     8

*Berger v. United States*
295 U.S. 78 (1935)     13

*Boyde v. California*
494 U.S. 370 (1990)     12

*Brecht v. Abrahamson*
507 U.S. 619 (1993)     4, 8

*Carey v. Musladin*
127 S.Ct. 649 (2006)     4

*Coleman v. Thompson*
501 U.S. 722 (1991)     10, 13

*Darden v. Wainwright*
477 U.S. 168 (1986)     7

*Davis v. Woodford*
384 F.3d 628 (9th Cir.2004)     13

*Donnelly v. DeChristoforo*
416 U.S. 637 (1974)     7, 14

*Dubria v. Smith*
224 F.3d 995 (9th Cir. 2000) (en banc)     8

*Duckett v. Godinez*
67 F.3d 734 (9th Cir. 1995)     7

*Early v. Packer*
537 U.S. 3 (2002) (per curiam)     4

*Fry v. Pliler*
___ U.S. ____ , 127 S.Ct. 2321 (2007)     5

*Griffin v. California*
380 U.S. 609 (1965)     5, 6, 8, 9

**TABLE OF AUTHORITIES** (continued)

**Page**

*Hamilton v. Mullin*
436 F.3d 1181 (10th Cir 2006) ............... 11

*Hernandez v. Small*
282 F.3d 1132 (9th Cir. 2002) ............... 2

*Jackson v. Giurbino*
364 F.3d 1002 (9th Cir. 2004) ............... 10

*Johnson v. Sublett*
63 F.3d 926 (9th Cir. 1995) ............... 7, 8

*Kansas v. Marsh*
___ U.S. ___, 126 S.Ct. 2516 (2006) ............... 9

*Lawn v. United States*
355 U.S. 339 (1958) ............... 13

*Lockyer v. Andrade*
538 U.S. 63 (2003) ............... 4

*Mahorney v. Wallman*
917 F.2d 469 (10th Cir. 1990) ............... 11

*Miller-El v. Cockrell*
357 U.S. 322 (2003) ............... 4

*Ortiz-Sandoval v. Gomez*
81 F.3d 891 (9th Cir. 1996) ............... 7

*Paulino v. Castro*
371 F.3d 1083 (9th Cir. 2004) ............... 10, 13

*Rich v. Calderon*
187 F.3d 1064 (9th Cir. 1999) ............... 10

*Richardson v. Marsh*
481 U.S. 208 (1987) ............... 15

*Smith v. Phillips*
455 U.S. 209 (1982) ............... 7

*Taylor v. Kentucky*
436 U.S. 478 (1978) ............... 11

*Thompson v. Borg*
74 F.3d 1571 (9th Cir. 1996) ............... 7

*Tillman v. Cook*
25 F.Supp.2d 1245 (D. Utah 1998) ............... 11

## TABLE OF AUTHORITIES  (continued)

Page

*United States v. Garcia-Guizar*
160 F.3d 511 (9th Cir. 1998) — 8

*United States v. Koon*
34 F.3d 1416 (9th Cir.1994) — 14

*United States v. Lester*
749 F.2d 1288 (9th Cir.1984) — 14

*United States v. Lopez*
803 F.2d 969 (9th Cir. 1986) — 13

*United States v. Robinson*
485 U.S. 25 (1988) — 8

*United States v. Sanchez*
176 F.3d 12144 (9th Cir.1999) — 13

*United States v. Williams*
989 F.2d 1061 (9th Cir.1993) — 14

*United States v. Young*
470 U.S. 1 (1985) — 13

*Viereck v. United States*
318 U.S. 236 (1943) — 14

*Wainwright v. Sykes*
433 U.S. 72 (1977) — 10, 13

*Weeks v. Angelone*
528 U.S. 225 (2000) — 9

*Williams v. Taylor*
529 U.S. 362 (2000) — 4

*Woodford v. Visciotti*
537 U.S. 19 (2002) (per curiam) — 4

**Statutes**

United States Code, Title 28
    § 2254(d) — 4
    § 2254(e)(1) — 2, 4

**TABLE OF AUTHORITIES  (continued)**

**Page**

California Penal Code
  § 211                   1
  § 245, subdivision (a)        1
  § 664                  1
  § 667.5, subdivision (b)       1
  § 12021, subdivision (a)(1)     1
  § 12022.7, subdivision (a)     1
  § 12280, subdivision (b)     1

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | JULIET B. HALEY, State Bar No. 162823
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7 |   Telephone:  (415) 703-5960
Fax:  (415) 703-1234
8 |   Email:  Juliet.Haley@doj.ca.gov

9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **SAINT DEJUAN MOORE,** | C 07-04736  JSW |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |
| v. | |
| **BEN CURRY, Warden,** | |
| Respondent. | |

## STATEMENT OF THE CASE

On April 8, 2005, the Alameda County District Attorney filed an information charging petitioner Moore and co-defendant Barrow with attempted second degree robbery, in which Barrow personally inflicted great bodily injury. Cal. Penal Code, §§ 211, 664, 12022.7, subd (a).  1 CT 189-190, 192-193.  Petitioner alone was charged with assault by force likely to produce great bodily injury, possession of a firearm by a felon and possession of an assault weapon (Cal. Penal Code, §§ 245, subd. (a), 12021, subd (a)(1), 12280, subd. (b).  2 CT 230-232.  It was further alleged that petitioner Moore had served a prior qualifying prison term.  Cal. Penal Code, § 667.5, subd. (b).

On June 30, 2005, a jury found petitioner guilty of the respective charges. 2 CT 304-307.

1    On July 27, 2005, the court found the allegation of petitinoer's prior prison term to be

2  true. 2 CT 406. Petitioner was sentenced to a state prison term of five years four months. 2 CT 401-

3  403, 406-409.   Petitioner's appeal was denied on December 28, 2006, in an unpublished opinion.

4  Exh. C.  Review was summarily denied by the California Supreme Court on March 14, 2007.  Exh.

5  D. Petitioner filed the instant habeas petition in this Court on September 14, 2007.

6                           **STATEMENT OF FACTS**

7    The state court of appeal found the facts to be as follows.  This summary constitutes a

8  factual finding that is presumed correct under 28 U.S.C. § 2254(e)(1). *Hernandez v. Small,* 282 F.3d

9  1132, 1135 n. 1 (9th Cir. 2002).

10    On Sunday, January 30, 2005, at approximately 8:30 p.m., Sergio Garcia drove into the
   parking lot of a check cashing business at High Street and International Boulevard. He
11   went into the business to buy some money orders. His 22-year-old wife, Claudia Ayala,
   stayed in the car. So did her 16-year-old sister, Reyna Alaya. Although it was nighttime,
12   it was "not too" dark-there was "50 percent lighting" from advertising signs.

13    After he bought the money orders, Sergio went back to his car. As he was unlocking the
   driver's door, a man came up to him from his right side and asked him for his money. The
14   man's tone of voice was a "little bit mad and strong." Sergio described the man as African-
   American, thin, wearing a sweatshirt with a hood over his head, and sporting an earring
15   in his right ear.

16    Sergio told the man that he did not have any money. The man lunged at Sergio and tried
   to take his wallet from his left pants pocket. The two men grappled and fell to the ground.
17   Sergio positively identified defendant Barrow in court as the man who approached and
   assaulted him, and was certain of his identification.
18

19    A second man arrived and started pulling on Sergio's leg. Sergio described the second
   man as African-American, "a little heavier," wearing a dark shirt with white lettering, and
20   with "an angry face." Sergio positively identified defendant Moore in court as the second
   man, and was certain of his identification.

21    Claudia got out of the car and screamed at defendants to leave Sergio alone. She put her
   hand on Moore's shoulder. Moore turned and struck Claudia in the face with a closed fist.
22   Claudia screamed. Moore hit her again. Claudia positively identified Barrow in court as
   the first man, and Moore as the second man.
23

24    Barrow struck Sergio on the left side of his face. Sergio stood up and screamed for
   someone to call the police for help. He saw that Claudia's face was swollen.

25    Barrow and Moore then left, walking away slowly. The assault had lasted about a minute
   and a half.
26

27    Sergio and Claudia got back into their car, and began to follow defendants. Defendants
   started to run. Claudia called 911 on her cell phone and reported the assault, but she was
   nervous and had trouble communicating with the operator. (Claudia spoke in both Spanish
28   and English.) Sergio took the phone and spoke to the 911 operator in Spanish.

Sergio followed defendants until they got into a parked car. Sergio described the car as a white Cadillac or Pontiac with chrome rims and tinted rear windows. Sergio identified a photograph of the white car in court. The white car drove in Sergio's direction and stopped. The driver got out and made a motion as if he were drawing a gun. Sergio put his car in reverse and backed away. The driver got back into the white car and drove off. Sergio followed the white car.

At some point, Sergio lost sight of the white car for about two minutes.

The tape of the 911 call was played for the jury, and depicts Claudia telling the 911 operator that the white car's license plate number was "4WCE642," which the operator later repeated (erroneously) as "4 WTEC42." Sergio took over the conversation with the operator while he was still following the white car. He first gave the number given by Claudia, but then said that was wrong and gave the license plate number as "2VVM660."

During the chase, Reyna wrote down the license plate number of the white car on an envelope. There were actually two numbers on the envelope-Sergio identified the bottom number, 2VVM660, as the license plate number he saw on the white car. He identified the license plate number both from the envelope and from two photographs of the white car.

Sergio explained the discrepancy between the two license plate numbers. The first number was given to him by 16-year-old Reyna, who apparently was nervous and did not read the white car's license plate number correctly; the second number, 2VVM660, was the number Sergio himself actually saw on the white car. Claudia testified that she, Sergio, and Reyna were all nervous while they tried to get the license plate number as Sergio chased the white car.

Sergio stayed on the line with the 911 operator and relayed the locations of the white car as he followed it. Eventually, a police car met up with him and he pointed out the white car in front of him. The police car began to follow the white car with its lights activated. Sergio followed. After a freeway chase, the police caught up to the white car and stopped it in Emeryville. Sergio parked nearby.

The police came over to Sergio's car and spoke with Sergio and Claudia. The police took Sergio in a squad car to the place where the white car had been stopped. Sergio identified two men, the one who had assaulted him (defendant Barrow) and the one who had assaulted Claudia (defendant Moore). Claudia also made an in-field identification of Barrow and Moore.

Defendant Moore was found in possession of a Tec-9 pistol, which is an assault weapon.

As a result of the incident, Sergio suffered a fractured lower jaw, which required surgery to wire his jaws together. The injury was on the left side, consistent with his having been struck by a right-handed person.

Defendants did not testify or present any witnesses. In closing argument, their counsel argued a defense of mistaken identity. Stressing the existence of two different license plate numbers, counsel argued that Sergio and Claudia had identified the wrong car and were mistaken in their identification of defendants-and that defendants were innocent.

The jury convicted defendants Barrow and Moore of the attempted second degree robbery of Sergio, during which Barrow personally inflicted great bodily injury. The jury convicted defendant Moore of the assault by means of force likely to produce great bodily injury of Claudia, plus two offenses related to the assault weapon possession. The trial court sentenced defendant Barrow to five years in prison and defendant Moore to five years four

1  months.

2  Exh. C, at 1-4.

**STANDARD OF REVIEW**

4       A federal court may grant a writ of habeas corpus to a state prisoner only if the state court's

5  rulings "resulted in a decision that was contrary to, or involved an unreasonable application of,

6  clearly established Federal law, as determined by the Supreme Court of the United States" or were

7  "based on an unreasonable determination of the facts in light of the evidence presented" in the state

8  courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a state court's decision is contrary to

9  federal law if it "contradicts the governing law set forth in our cases" or if it "confronts a set of facts

10  that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result

11  different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *see also Early v.*

12  *Packer*, 537 U.S. 3, 8 (2002) (per curiam). If there is no Supreme Court precedent that controls a

13  legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an

14  unreasonable application of, clearly established federal law. *Carey v. Musladin*, 127 S.Ct. 649, 653-

15  54 (2006) (denying habeas relief in absence of clearly established federal law).

16       In order to warrant habeas relief, the state court's application of clearly established federal

17  law must not be merely erroneous, incorrect, or even "clear error," but "objectively unreasonable."

18  *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *see also Williams v. Taylor*, 529 U.S. at 409; *Woodford*

19  *v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). It is the habeas petitioner's burden to make that

20  showing. *Woodford,* at 25. In the same way, a "decision adjudicated on the merits in a state court

21  and based on a factual determination will not be overturned on factual grounds unless objectively

22  unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*,

23  357 U.S. 322, 340 (2003). State court factual determinations are presumed correct unless rebutted

24  by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

25       Even if the state court's ruling is contrary to or an unreasonable application of Supreme

26  Court precedent, that error justifies overturning the conviction only if the error had "substantial and

27  injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619,

28  637 (1993). The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error

1   review conducted by the state courts. *Fry v. Pliler*, ___ U.S. ____ , 127 S.Ct. 2321 (2007).

2   **ARGUMENT**

3   **I.**

4   **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM OF *GRIFFIN*[1/] ERROR WAS NOT OBJECTIVELY UNREASONABLE**

5

6   During the prosecutor's closing jury argument, the following interruptions by defense

7   counsel and rulings by the court occurred:

8   Now, although the defense is not required to call any witnesses, the burden of proof is completely on me, the District Attorney's Office, to prove beyond a reasonable doubt the defendant's guilt. The defense in this case both failed to call logical witnesses in this case.

9

10

11   MR. YUN [Barrow's lawyer]: Your Honor, I would object. That's shifting the burden here.

12   MR. WOHLSTADTER [Moore's lawyer]: I'm going to object on *Griffin* error.

13   THE COURT: I think case law has held—I haven't heard what the argument is yet. The case law says it's fair commentary.

14

15   MS. YNOSTROZA: Thank you.

16   MR. WOHLSTADTER: Judge, by "logical witnesses", she is implying, I think, an improper reference.

17   THE COURT: You know, obviously—and I will put it right out here—it's obviously improper since the jury cannot consider in any way the fact that a defendant didn't testify. It's improper to argue, to implicate something that the defense didn't do, because they have a constitutional right and they have exercised it. That's not to be contemplated and it's not fair to argue.

18

19

20   But there is an argument, and I don't know what she is going to argue yet. She is ready to jump on it right now. I don't know what she is going to argue yet, so we will see. But the jury is cautioned in that regard.

21

22   MS. YNOSTROZA: What I'm doing at this time is I'm commenting on the state of the evidence and the failure of the defense to introduce material evidence or to call logical witnesses.

23

24   I'm citing and reading from changing the names to the two defendants in this case that you have heard about here in this courtroom, but it's a case, good case law, *People v. Morris*, and the cite is 46 Cal.3d at page 1.

25

26   Everything comes together. The bits of the puzzle come together to fit the point of defendant Barrow and defendant Moore, and nothing points at anybody else.

27

---

28   1. *Griffin v. California*, 380 U.S. 609 (1965)

1    Keep in mind that there is not a shred of evidence, not a shred to suggest that
anybody else did the attempt robbery or assaulted Sergio or Claudia other than defendants
2    Barrow and Moore. Not a shred. There is no shred of evidence to indicate that defendant
Moore or defendant Barrow were anywhere else on the evening of January 30th, 2005.
3    Nothing.

4    Put yourself in the position of being a defendant, and you can bet your boots, if you
had anything to offer by way of evidence, by way of alibi, that you would offer it. Be
5    assure of that. Be assured of the fact that any defense attorney would make sure that if any
such evidence existed, you would have it. You don't have it.

6

MR. WOHLSTADTER:  Your Honor, I'm going to object to that as improper
7    argument. I don't know the facts of that case.

8    THE COURT:  You want to join?

9    MR. YUN:  I join.

10    THE COURT:  Your objections are noted for the record.

11   11 RT 2495-2497.

12   Petitioner contends the prosecutor's argument constituted an improper reference to the

13   petitioner's choice not to testify. He argues unpersuasively that given the shortness of time between

14   when the attempted robbery and assaults occurred, and when the white Pontiac was seen again by

15   the victims, there were no "logical witnesses" who could have testified where petitioner was in order

16   to provide them with an alibi.  Petitioner therefore maintains that the prosecutor's comments on the

17   absence of these witnesses improperly invited the jury to draw a negative inference from his failure

18   to testify. Petitioner does not address the alternative ground of the prosecutor's argument, viz. the

19   absence of material evidence.   Said contention was reasonably rejected by the state court.

20   **A.    State Court's Analysis Of The Claim**

21   Defendants contend the prosecutor commented on their right to not testify, in violation of
*Griffin v. California* (1965) 380 U.S. 609 (*Griffin*). The prosecutor argued as follows:
22   "Now, although the defense is not required to call any witnesses, the burden of proof is
completely on me, the District Attorney's Office, to prove beyond a reasonable doubt the
23   defendants' guilt. The defense in this case both failed to call logical witnesses in this
case." After defendants objected, citing *Griffin*, the trial court clarified that the jury could
24   not consider defendants' failure to testify.

25   The prosecutor further argued: "What I'm doing at this time is I'm commenting on the
state of the evidence and the failure of the defense to introduce material evidence or to call
26   logical witnesses. [¶¶] ... [¶¶][¶¶] Keep in mind that there is not a shred of evidence, not
a shred to suggest that anybody else did the attempt[ed] robbery or assaulted Sergio or
27   Claudia other than defendants.... Not a shred. There is no shred of evidence to indicate that
defendant[s] were anywhere else on the evening of January 30, 2005. Nothing. [¶¶] Put
28   yourself in the position of being a defendant, and you can bet your boots, if you had

1   anything to offer by way of evidence, by way of alibi, that you would offer it. Be assured
    of that. Be assured of the fact that any defense attorney would make sure that if any such
2   evidence existed, you would have it. You don't have it."

3   The prosecutor's comments are not *Griffin* error but a legitimate comment on the lack of
    defense alibi evidence. " *Griffin* ... protects a defendant's right not to have the prosecutor
4   comment on his failure to testify. A prosecutor is permitted, however, to comment on a
    defendant's failure to introduce material evidence or call logical witnesses. [Citation.]"
5   ( *People v. Brown* (2003) 31 Cal.4th 518, 554 ( *Brown* ); see *People v. Morris* (1988) 46
    Cal.3d 1, 35-36 ( *Morris* ), disapproved on unrelated grounds in *In re Sassounian* (1995)
6   9 Cal.4th 535, 543-544, fn. 5, 545, fn. 6.)

7   Both *Brown* and *Morris* approve of arguments such as the one made by the prosecutor in
    this case, commenting on the lack of alibi evidence. ( *Brown, supra,* 31 Cal.4th at pp. 552,
8   554; *Morris, supra,* 46 Cal.3d at pp. 35-36.) "By directing the jury's attention to the fact
    defendant never presented evidence that he was somewhere else when the crime was
9   committed, the prosecutor did no more than emphasize defendant's failure to present
    material evidence. He did not capitalize on the fact defendant failed to testify." ( *Brown,*
10  *supra,* at p. 554.)

11  Exh. C, at 15-16.

12  **B.   Petitioner Has Failed To Establish That The State Court's Rejection Of The Claim**
    **Was An Unreasonable Application Of Griffin**
13

14  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct

15  is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219

16  (1982).  Habeas relief is warranted only if the prosecutor's comments in closing argument "so

17  infected the trial with unfairness as to make the resulting conviction a denial of due process."

18  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (citation omitted); *accord, Johnson v. Sublett,* 63

19  F.3d 926, 929 (9th Cir. 1995).  Because the standard of review on federal habeas corpus is "the

20  narrow one of due process, and not the broad exercise of supervisory power," even improper

21  argument does not necessarily violate a defendant's constitutional rights. *Thompson v. Borg,* 74 F.3d

22  1571, 1576 (9th Cir. 1996) (citation omitted); *Duckett v. Godinez,* 67 F.3d 734, 743 (9th Cir. 1995).

23  In determining whether a due process violation occurred, "[t]he arguments of counsel are

24  generally accorded less weight by the jury than the court's instructions and must be judged in the

25  context of the entire argument and the instructions." *Ortiz-Sandoval v. Gomez,* 81 F.3d 891, 898

26  (9th Cir. 1996).  "A court should not lightly infer that a prosecutor intended an ambiguous remark

27  to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that

28  meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo,* 416 U.S.

1   637, 647 (1974); *accord, Babbitt v. Calderon*, 151 F.3d 1170, 1179-1180 (9th Cir. 1998); *Dubria*

2   *v. Smith*, 224 F.3d 995, 1103 (9th Cir. 2000) (en banc).

3          Further, if constitutional error occurred, habeas relied is unavailable unless the error had

4   a substantial and injurious effect or influence on the jury's verdict. *Johnson v. Sublett,* 63 F.3d 926,

5   930 (9th Cir.1995) (citing *Brecht v. Abrahamson,* 507 U.S. 619 (1993)).

6          As the state court correctly observed, a prosecutor may comment on a defendant's failure

7   to produce material evidence or to call logical witnesses. *United States v. Robinson*, 485 U.S. 25,

8   26-34 (1988); *United States v. Garcia-Guizar*, 160 F.3d 511, 521-22 (9th Cir.1998) (prosecutor did

9   not shift the burden of proof in commenting on the defendant's failure to produce evidence). And a

10  prosecutor may comment on the absence of evidence even when such evidence was available, but

11  inadmissible, so long as there is sufficient evidence to support the prosecutor's version of events.

12  *See Bashor v. Risley,* 730 F.2d 1228, 1240 (9th Cir.1984) (finding no misconduct where the

13  prosecutor argued that the defendant had one intention when an inadmissible polygraph test

14  suggested that he had a different intention).

15         This is exactly what occurred here. The prosecutor invited the jury, to "[p]ut yourself in

16  the position of being a defendant, and you can bet your boots, if you had anything to offer by way

17  of evidence, by way of alibi, that you would offer it. Be assured of that. Be assured of the fact that

18  any defense attorney would make sure that if any such evidence existed, you would have it. You

19  don't have it." 11 RT 2497. Petitioner's speculation about the possible lack of alibi evidence to

20  establish his whereabouts does not detract from the prosecutor's remarks being properly confined

21  to the absence of any such exonerating evidence. The lack of any prosecutorial reference, indirect

22  or otherwise, to the petitioner's failure to take the stand and testify likewise signifies that there was

23  no *Griffin* error here.

24         Moreover, petitioner's argument ignores the impact of the court's instruction to the jury.

25  Before the prosecutor had even been allowed to finish her comments, defense counsel objected, and

26  the court addressed counsel's premature objections by admonishing the jury that it would be

27  improper for them to "consider in any way the fact that a defendant didn't testify . . . because they

28  have a constitutional right and they have exercised it. That's not to be contemplated and it's not fair

1    to argue." 11 RT 2495-2496. Juries are presumed to follow the court's instructions. *Weeks v.*

2    *Angelone*, 528 U.S. 225, 233 (2000); *Kansas v. Marsh*, ___ U.S. ___, 126 S.Ct. 2516, 2528 (2006).

3    Thus, even if the prosecutor's remarks, though specifically directed as comments on the state of

4    evidence, could have been interpreted by the jury to allow them to draw the inference from silence

5    now suggested by petitioner, the court's instruction overcame any inclination to hold petitioner's

6    failure to testify against him.

7         Finally, assuming that the prosecutor's argument could somehow be construed as *Griffin*

8    error, the remarks did not have a substantial or injurious effect on the verdict. Any *Griffin* error

9    contained in the prosecution's remarks was indirect at most, brief when viewed in context of the

10   84-page closing argument and 26-page rebuttal argument, mild, and did not suggest an inference of

11   guilt be drawn from petitioner's silence. And most significantly,  the evidence against petitioner

12   was overwhelming. Both victims positively identified him, he was found almost immediately after

13   the crime in the vehicle that had been identified by the victims, he fled on foot when stopped by

14   police, and when detained, asked without any prompting "if someone had gotten robbed or

15   something". 4 RT 900-902, 922, 953, 955, 957; 5 RT 972-73. Last,  a loaded .9 millimeter Lugar

16   brand Intratec model firearm, designed as a semi-automatic weapon, plus a magazine for it, were

17   found inside his backpack. 2 RT 302-03, 4RT 960-62; 5RT 1033-60.  The state court's denial of

18   petitioner's *Griffin* claim was not unreasonable.

19                                   **II.**

20   **ANY ERROR IN THE PROSECUTOR'S COMMENT REGARDING
     THE  PRESUMPTION  OF  INNOCENCE  WAS    WAIVED  BY**
21   **PETITIONER'S FAILURE TO OBJECT AND WAS NOT IN ANY
     EVENT IMPROPER OR DENY PETITIONER DUE PROCESS**
22

23        During closing argument to the jury the prosecutor also made the following comments, to

24   which there were no defense objections:

25        The presumption of innocence was talked a lot about during jury selection. There was
          mention of it in closing by both defense attorneys.  The presumption of innocence is
26        important, and it exists at the beginning of all criminal cases. But at the close of evidence,
          and  specifically  the  close  of  evidence  in  this  case,  the  presumption  of  innocence
27        disappears.  It's not something that sticks with the person come thick or thin.

28        The state of the evidence is that these defendants are no longer presumed innocent,

1    because they have been proven guilty beyond a reasonable doubt.

2    11 RT 2500.

3        Petitioner contends the prosecutor violated his constitutional rights by misstating the law

4    as it applied to the presumption of innocence. The state court rejected the claim as follows:

5        The prosecutor argued that "The presumption of innocence is important, and it exists at
         the beginning of all criminal cases. But at the close of evidence, and specifically the close
6        of evidence in this case, the presumption of innocence disappears."

7        Defendants contend this was a misstatement of the law in violation of their constitutional
         rights. Relying to some extent on older authorities, defendants claim that the presumption
8        of innocence continues throughout the trial and the deliberations of the jury, and is
         dispelled only by a verdict of guilt. (See, e.g., *People v. Hardwick* (1928) 204 Cal. 582,
9        594-595; *People v. Ye Foo* (1907) 4 Cal.App. 730, 740.)

10       It does not appear that this instance of alleged misconduct has been preserved for appellate
         review by a proper objection and request for admonition. (See *Brown, supra,* 31 Cal.4th
11       at p. 553.) In any case, there is no error. Penal Code section 1096 states that defendant "is
         presumed to be innocent until the contrary is proved...." This language is contained in
12       CALJIC No. 2.90, which was given to the jury in the present case. Thus, the jury was
         properly instructed on the presumption of innocence and was not misled by the
13       prosecutor's remark. The jury doubtless knew defendants were presumed innocent until
         the People had proven to the contrary, i.e., presented evidence of their guilt beyond a
14       reasonable doubt. (See *People v. Goldberg* (1984) 161 Cal.App.3d 170, 189.) The
         presumption of innocence is overcome when the jury is convinced that a defendant is
15       guilty beyond a reasonable doubt and returns a verdict in accordance with that quantum
         of proof.

16

17   Exh. C, at 16.

18   **A.    The State Court's Finding That The Remark Did Not Lower The Burden Of Proof
            Was Not Objectively Unreasonable**

19

20       To begin, petitioner did not object to this remark. The state court correctly observed that

21   his failure to do so waived any claim of misconduct under state law.   Accordingly, federal habeas

22   review of petitioner's prosecutorial misconduct claim is procedurally barred. *See, e.g., Coleman v.*

23   *Thompson,* 501 U.S. 722, 750 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 86-87, 97 (1997); *Paulino*

24   *v. Castro,* 371 F.3d 1083, 1092-93 (9th Cir. 2004) (California's contemporary-objection rule

25   precludes federal habeas review); *Jackson v. Giurbino,* 364 F.3d 1002, 1006-1007 (9th Cir. 2004)

26   (failure to object to prosecutor's closing argument); *Rich v. Calderon,* 187 F.3d 1064, 1070 (9th Cir.

27   1999) (same).

28       Considered on the merits, the claim fails as well. The prosecutor's unchallenged statements

1  here did not constitute misconduct under either federal or state law, or otherwise "denigrate" the

2  presumption of innocence.  In *Allen v. United States,* 164 U.S. 492 (1896), the United States

3  Supreme Court expressed how the presumption of innocence operates.  It

4      "stayed with [the defendant] until it is driven out of the case by the testimony.  It is driven
        out of the case when the evidence shows, beyond a reasonable doubt, that the crime as
5      charged has been committed, or that a crime has been committed.  Whenever the proof
        shows, beyond a reasonable doubt, the existence of a crime, then the presumption of
6      innocence disappears from the case."

7  *Id.* at 500 (quoting from the trial court's instruction in that case)

8      The Supreme Court has more recently observed about the presumption that:

        It is now generally recognized that the "presumption of innocence" is an inaccurate,
9      shorthand description of the right of the accused to "remain inactive and secure, until the
        prosecution has taken up its burden and produced evidence and effected persuasion; i. e.,
10     to say in this case, as in any other, that the opponent of a claim or charge is presumed not
        to be guilty is to say in another form that the proponent of the claim or charge must
11     evidence it."

12  *Taylor v. Kentucky*, 436 U.S. 478, 483, n. 12 (1978).

13      Consequently, the prosecutor was not far off the mark when she asserted during argument

14  that petitioner and his codefendant were "no longer presumed innocent, because they had been

15  proven guilty beyond a reasonable doubt." 11 RT 2500.  This argument did not misstate the law.

16  In essence, the prosecutor was urging that because the evidence proved petitioner's guilty beyond

17  a reasonable doubt, the presumption of innocence was rebutted.

18      Nor was the prosecutor's argument in this case comparable to that found objectionable in

19  *Mahorney v. Wallman*, 917 F.2d 469, 471 (10th Cir. 1990), in which petitioner claims a "very

20  similar presentation" was made. Pet at 7. Other federal court decisions have distinguished *Mahorney*

21  because the prosecutor there essentially told the jury to disregard the presumption of innocence.[2]

22  *See Hamilton v. Mullin*, 436 F.3d 1181, 1188 (10th Cir 2006); *Tillman v. Cook*, 25 F.Supp.2d 1245,

23  1278 (D. Utah 1998).  Unlike *Mahorney*, the prosecutor here did not ask the jury to disregard the

24  presumption of innocence.  Rather the prosecutor linked that presumption directly to the state's

25

26      2.  "I submit to you . . . under the law and under the evidence, that [the presumption of
27  innocence] has been removed, that that presumption no longer exists, that that presumption has been
    removed by evidence and *he is standing before you now guilty*.  That presumption is not there any
28  more."  *Mahorney v. Wallman*, 917 F.2d at 471 (italics added).

1  burden to prove its case beyond a reasonable doubt.  Thus,  there is no reasonable likelihood that the

2  jury understood or applied the complained-of comments in an improper or erroneous manner.   This

3  conclusion is further bolstered by the fact that arguments of counsel "generally carry less weight with

4  a jury than do instructions from the court, . . . are usually billed in advance to the jury as matters of

5  argument, not evidence, . . . and are likely viewed as the statements of advocates," whereas the

6  instructions from the court "are viewed as definitive and binding statements of the law." *Boyde v.*

7  *California*, 494 U.S. 370, 384 (1990).   And the jury was properly instructed regarding the burden

8  of proof and  told  to follow the law as stated by the court. 10 RT 2283.  On this record, petitioner

9  has failed to establish that the state court's rejection of the claim was  unreasonable.

10  **III.**

11  **THE STATE COURT REASONABLY CONCLUDED THAT THE
    PROSECUTOR'S ARGUMENT WAS PROPER**

12

13       Petitioner contends, based on the prosecutor calling the witnesses "honest about what

14  happened," that the jury reasonably took the remark as a personal guarantee of one who had

15  investigated the case and come to the conclusion that the witnesses *were* honest.   This claim is

16  utterly without merit.  It was reasonably rejected by the state court on the basis  that the complaint

17  was waived based on petitioner's failure to object and that the " prosecutor was properly commenting

18  on the credibility of certain witnesses based upon their testimony and demeanor during trial." Exh

19  C, at 17.  Its conclusion is sound.

20  **A.   Factual Background**

21       Co-defendant's Moore's lawyer argued to the jury that the prosecution's eyewitnesses were

22  coached and their testimony tainted.  11 RT 2407, 2409.  In response, the prosecutor urged that:

23       The witnesses who came in here were honest about what happened.  Sometimes they
         couldn't provide more information above and beyond what they said at the Preliminary
24       Hearing.  Sometimes they could.
         This wasn't drama.  They are not actors.  This isn't scripted.  This isn't a situation where
25       they were asked or told to do anything in particular.  They were only asked to come in here
         and tell the truth.  Each of them told you that, and they did their best to do so.  It's not
26       comical.

27  11 RT 2482-2483.

28       Again, the improper vouching claim has been forfeited because petitioner failed to object

1  to the prosecutor's comments and seek a curative admonition from the court.  *See, e.g., Coleman,*

2  501 U.S. at 750; *Wainwright v. Sykes,* 433 U.S. at 86-87, 97; *Paulino v. Castro,* 371 F.3d 1083,

3  1092-93.

4          Considered on the merits, the claim fails as well.  It is well established that a prosecutor

5  may not vouch for the credibility of a witness.  *United States v. Sanchez,* 176 F.3d 1214, 1224 (9th

6  Cir.1999); *United States v. Lopez,* 803 F.2d 969, 973 (9th Cir.1986) (improper to suggest that

7  witness found credible by the grand jury should therefore be credible to the trial jury).  Prosecutorial

8  misconduct occurs when a prosecutor vouches for the credibility of a witness by giving personal

9  assurances of the witness's truthfulness or suggesting that there is information not presented to the

10  jury which supports the witness's testimony.  *See Berger v. United States,* 295 U.S. 78, 86-88 (1935);

11  *see also Lawn v. United States,* 355 U.S. 339, 359-60 n. 15 (1958).  Such vouching is misconduct

12  because it poses two dangers: it may lead the jury to convict on the basis of evidence not presented,

13  and it carries with it the imprimatur of the government. *See United States v. Young,* 470 U.S. 1, 18

14  (1985).  To warrant habeas relief, prosecutorial vouching must so infect the trial with unfairness as

15  to make the resulting conviction a denial of due process.  *Davis v. Woodford,* 384 F.3d 628, 644 (9th

16  Cir.2004) (citation omitted).

17          Here, when the prosecutor indicated that the witnesses were being honest, she did so in

18  the context of the information they provided at the preliminary hearing, a situation in which they

19  were not asked or told to do anything in particular.  This was permissible argument, as her comments

20  simply urged the jury to credit their testimony based on matters within the record, not matters within

21  the prosecutor's own personal knowledge.  The state court found so and its rejection of the claims

22  on the merit was not unreasonable.

23                                           **IV.**

24          **THE STATE COURT WAS NOT UNREASONABLE IN CONCLUDING**
              **THAT THE COURT'S PROMPT ADMONITION CURED ANY HARM**
25

26          Finally, the following occurred during the prosecutor's closing argument in regard to what

27  the prosecutor viewed as the jury's responsibility to the community:

28          You jurors are the voice of the community.  If you want to acquit the defendants based on

1     this license plate discrepancy, as the defense attorneys have tried to blow it up into a big
    issue, that's your decision. If you want to acquit them and release them back into your
2     community to prey on other people in our community.

3     MR. WOHLSTADTER: I object - -
    MR. YUN: I object.
4     MR. WOHLSTADTER: -- and cite for misconduct and move --
    THE COURT: Mr. Wohlstadter --
5     MR. WOHLSTADTER: May I approach?
    THE COURT: At sidebar. No speaking objections.
6     MR. WOHLSTADTER: May we approach?
    THE COURT: You may.

7
(Short discussion off the record)
8
    THE COURT: Thank you. Please move on, Ms. Ynostroza.
9     THE COURT: Thank you, Ms. Ynostroza. [¶] I want to caution the jury about the
    comment made by Ms. Ynostroza about the potential for future harm of these two
10     defendants should not be considered by you.
    That should not have been a part of your argument.
11     Please remember that the instruction does indicate that both the People and the defendants
    have a right to expect that you will conscientiously consider and weigh the evidence, apply
12     the law, and reach just verdicts, regardless of the consequences.

13 11 RT 2503.

14     It is well established that prosecutors may not make comments calculated to arouse the

15 passions or prejudices of the jury. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). A

16 prosecutor may not urge jurors to convict a criminal defendant in order to protect community values,

17 preserve civil order, or deter future lawbreaking. The problem in such prosecutorial appeals is that

18 the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors

19 may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the

20 solution of some pressing social problem. *United States v. Koon*, 34 F.3d 1416, 1443 (9th Cir.1994)

21 On the other hand, a prosecutor may ask the jury to act as a "'conscience of the community'" unless

22 such a request is "'specifically designed to inflame the jury.'" *United States v. Williams*, 989 F.2d

23 1061, 1072 (9th Cir.1993) (quoting *United States v. Lester*, 749 F.2d 1288, 1301 (9th Cir.1984));

24 *United States v. Koon*, 34 F.3d 1416, 1444 (1994).

25     Additionally, as discussed elsewhere, when assessing the remarks of a prosecutor, the

26 Supreme Court instructs that "a court should not lightly infer that a prosecutor intends an ambiguous

27 remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will

28 draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*,

1 | 416 U.S. 637, 647.

2 | In this case, the state court found that while the remarks were improper under state law,

3 | the trial court's immediate admonition to the jury cured any harm. Exh. C, at 17. Its conclusion is

4 | sound and supported by the record.

5 | Right after petitioner objected to the prosecutor's argument, the trial court directed the

6 | prosecutor to "move on," and admonished her in front of the jury that this "should not have been a

7 | part of your argument." 11 RT 2503. The court then directed the jury instead to "consider and

8 | weigh the evidence, apply the law, and reach just verdicts, regardless of the consequences." 11 RT

9 | 2503. The prosecutor never repeated the remarks.

10 | Where a trial court has instructed the jury to disregard a prosecutor's improper statement,

11 | it is presumed that the jury followed the admonition. Such cautionary instructions by the trial court

12 | are generally deemed effective in counteracting any prejudice from counsel's statements.

13 | *Richardson v. Marsh*, 481 U.S. 208, 211 (1987). Moreover, the jury was also instructed that it was

14 | not to be influenced by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion,

15 | or public feeling.   The jury is also presumed to have followed this instruction.

16 | In sum, the complained-of remark is not the type which was so inflammatory that it would

17 | have caused the jury to convict petitioner on passion rather than evidence. It was brief, and the jury

18 | was immediately admonished as to its impropriety.   On this record the state court was not

19 | unreasonable in concluding that the admonition was effective.

20 | ///

21 | ///

22 | ///

23 |

24 |

25 |

26 |

27 |

28 |

1

**CONCLUSION**

2

Accordingly, respondent respectfully requests that the petition be denied.

3

Dated:  December 7, 2007

4

Respectfully submitted,

5

EDMUND G. BROWN JR.
Attorney General of the State of California

6

DANE R. GILLETTE
Chief Assistant Attorney General

7

8

GERALD A. ENGLER
Senior Assistant Attorney General

9

PEGGY S. RUFFRA
Supervising Deputy Attorney General

10

11

/s/ Juliet B. Haley

12

JULIET B. HALEY
Deputy Attorney General

13

Attorneys for Respondent

14

40194428.wpd
SF2007402709

15

16

17

18

19

20

21

22

23

24

25

26

27

28