

Walter K. Pyle (Bar No. 98213)
2039 Shattuck Avenue, Suite 202
Berkeley, CA  94704-1116
(510) 849-4424
*Attorney for Petitioner*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAINT DEJUAN MOORE,

*Petitioner,*

v.

BEN CURRY, Warden,

*Respondent.*

No. **C 07-4736 JSW**

**TRAVERSE**

The issue at petitioner's trial was whether he and his companion were the two men who tried to rob Sergio Garcia and then fled in a white car with chrome rims and dark windows.  Garcia had told police the getaway car was an older Lincoln or a Cadillac, while the defendants' car (white, with chrome rims and dark windows) was a Pontiac.  The Garcia family had copied down the license number of the car they pursued (4 WCE 642), while the defendants' car, which they spotted a couple of minutes later, had a different number (2 VVM 660).

Garcia and his family, however, identified the two men as the assailants, and this was enough to convict them.

At least after the prosecutor's closing argument.

**I.**

## THE PROSECUTOR'S FINAL ARGUMENT VIOLATED THE CONSTITUTIONAL PROHIBITION AGAINST COMMENT ON A DEFENDANT'S FAILURE TO TESTIFY.

Petitioner has consistently maintained that under *Griffin v. California* (1965) 380 U.S. 609 it is constitutional error for the prosecutor to comment on the failure of the defendant to testify. Quite logically, the law does not permit the prosecutor to do indirectly what she may not do directly, and the law is firmly established that the prosecutor cannot argue that the State's evidence is uncontradicted if the contradiction could be provided only by the defendant, who therefore would be required to take the witness stand. *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006). It is this aspect of the *Griffin* rule—the prosecutor's argument here that nobody gave alibi testimony when the defendants were the only ones who *could* have given such testimony—that is at the heart of the issue.

The State does not dispute the legal principle Moore claims is controlling; the State simply ignores it, and avoids any mention of it at all. Their only answer to Moore's constitutional claim is to repeat the general rule that the State can comment on the failure of a defendant to introduce logical evidence. They avoid altogether dealing with the metaphorical bloody rhinoceros head in the room, which is this: Given the extremely short window of time involved between the time the assailants fled and the time the two defendants were seen in the Wendy's parking lot, the defendants were the only logical witnesses who could have given alibi testimony. All we have from the State, in response to petitioner's contention, is resounding silence.

Here is what we say about the State's silence on this crucial issue:

Put yourself in the position of being the respondent in a habeas corpus case, and you can bet your boots if you had anything to offer by

2

*Traverse*

1
2
3
4
5

way of rebuttal to the petitioner's claim that the only witnesses who could possibly have testified by way of alibi were the defendants themselves, that you would offer it.  Be assured of that.  Be assured of the fact that any attorney for the State would make sure that if any answer to the petitioner's argument existed, you would have it.  You don't have it.

6
7
8
9
10
11
12
13
14
15
16

Now, when we make these statements, they are not, nor are they intended to be, ambiguous remarks, as the State suggests the prosecutor's argument was.  (Points & Authorities in Support of Answer, p. 7.)  Nor are we suggesting that someone else out there could provide a rebuttal argument; we are saying the State is the only party who could do that.  Nor are we saying that our comments do not suggest drawing an adverse inference from the State's silence, as the State claims should not be drawn from the prosecutor's comments—quite the contrary, that is exactly the inference we hope will be drawn, and that is exactly why we made the argument.  And, we submit, that is exactly why the prosecutor made the argument against Moore and his companion—to suggest an inference of guilt for their failure to explain where they were at the time of the crime.

17
18
19
20
21
22
23
24
25
26

The State suggests that when it comes to measuring prejudice, the remarks of the prosecutor here are similar to those in *Donnelly v. DeChristoforo* (1974) 416 U.S. 637.   But the remarks in these two different cases are not similar at all.  In *DeChristoforo* the prosecutor commented on the defendants' possible motives for choosing to go to trial.  However there the court took "special pains" to correct any impression that the jury could consider the prosecutor's statements, and explicitly instructed the jury that there was no support for the comment, stating, "[Y]ou are instructed to disregard that statement made by the District Attorney."  *Id*. at 644.  In *DeChristoforo* the prosecutor's remark was "admittedly an ambiguous one," *id*. at 645,  while here there is nothing ambiguous at all about the prosecutor's remarks, and there is no less damaging

27
28

3

1

2

3   meaning here than urging the jury to use the defendants' exercise of a

    constitutional right against them.

4

5        Nor were the prosecutor's remarks here mere passing comments.  In

    *DeChristoforo* the improper comment was a single statement—"a few brief

6   sentences in the prosecutor's long and expectably hortatory closing

7   argument"—followed by disapproving instructions.  *DeChristoforo* at 647, 645.

8   Here, the prosecutor made the defendants' failure to speak one of the focal

9   points of her argument, and the court's failure to overrule the defendants'

10  objections gave legitimacy to the prosecutor's argument in the eyes of the jury.

11       Nor was the evidence even close to overwhelming.  Garcia had identified

12  the assailants' car as an older Lincoln or Cadillac (RT 1664) while the

    defendants' car was a Pontiac.  (RT 1996.)  The only evidence that defendants
13
    were the assailants was the eyewitness identification by Garcia and his family.
14
    But  a jury might think it significant that when the defendants' car was stopped
15
    by police, the radio dispatch operator said, "Look, when the officers come talk
16
    to you, make sure you tell them they tried to mug you and they assaulted you
17
    and your wife, okay?"  (RT 1540.)

18       The State suggests that the fact that Mr. Moore ran from the car when it

19  was pulled over by the police, and the fact that he had a 9 millimeter pistol was

20  part of the "overwhelming" evidence against him.  But the fact that Moore had

21  a gun proved nothing about identity; the assailants were, as far as we know,

    unarmed.  And it would be logical for a juror to think that the fact that
22
    petitioner possessed a gun was a very good reason to run from the police.
23
         Nor does the jury seem to have viewed the case against the defendants as
24
    overwhelming.  The  jury during deliberations asked to hear the 911 tape again
25
    (RT 2524) and later asked to have a readback of the testimony of both Claudia
26

27

28

Ayala and Reyna Ayala from the time contact was broken off at the currency exchange until they lost sight of the individuals in the white car.  (RT 2558.)

When one tries to devine the outcome of a trial without this error—a trial that did not take place—it is important to remember that one need not say with absolute certainty that the jury would have reached a different verdict.   If the State commits error, the State must bear the risk that the error may have been harmful.  If the lack of effect on the verdict is not reasonably certain, "the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict (i.e., as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')."  *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

Moreover, this was not the only error committed by the prosecutor.  Each improper comment through her final argument made it more and more likely that the defendants would not receive a fair trial.

## II.
**IT WAS REVERSIBLE ERROR FOR THE PROSECUTOR TO ASSURE THE JURY THAT "AT THE CLOSE OF EVIDENCE THE PRESUMPTION OF INNOCENCE DISAPPEARS."  THIS DENIGRATED BOTH THE PRESUMPTION OF INNOCENCE AND THE REASONABLE DOUBT STANDARD.**

The prosecutor next told the jury to disregard the presumption of innocence during their deliberations, because it had already expired at the close of the evidence.

Preliminarily, we note that the State claims the "no presumption of innocence" error was waived.  (State's Points & Authorities, p. 10.)  That may have been a valid argument in the State courts, but not here.  As we pointed out in our Points & Authorities in Support of the Petition (p. 12) the error is properly preserved for *federal* review, because the State court did not rely on

waiver as an "adequate and independent state ground" to deny relief, but in fact reached the merits on the claim.  *Coleman v. Thompson*, 501 U.S. 722, 733 (1991); *Thomas v. Hubbard, supra* 273 F.3d 1164, 1176.  If the state court is given the opportunity to consider, and does consider, the claim on the merits, "there is no basis for a federal habeas court's refusing to consider the merits of the federal claim."  *Harris v. Reed*, 489 U.S. 255, 265, n. 12 (1989).  The State in its Answer does not dispute this principle of federal law.[1]

The State argues on the merits that the prosecutor was "not far off the mark" when she said the presumption of innocence disappears at the close of the evidence because the Supreme Court has said the presumption lasts until "the evidence shows, beyond a reasonable doubt, that the crime as charged has been committed," or when the prosecution had "produced evidence and effected persuasion."  Anyway, says the State, the prosecutor was merely saying "in essence" that the presumption of innocence "was rebutted."  (State's Points & Authorities, p. 11.)

---

[1] Instead of disputing the federal rule cited by petitioner applicable when the State court *has* considered the claims on their merits, the State cites cases which hold that if the State *refuses* to rule on the merits of a federal claim, then the claim is procedurally barred in federal court.  *Wainright v. Sykes*, 433 U.S. 72, 74 (1997) [refusing to consider "a claim which the Florida courts have previously refused to consider on the merits because of noncompliance with a state contemporaneous-objection rule"]; *Coleman v. Thompson*, 501 U.S. 722, 723  (1991) [Virginia Supreme Court dismissed habeas petition solely on state procedural grounds; "Because of comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody"]; *Paulino v. Castro*, 371 F.3d 1083, 1092-1093 (9th Cir. 2004) [California Court of Appeal rejected claim of improper jury instruction because counsel did not object and in fact "consented to the trial court's handling of the issue" (citing *Coleman*)]; *Jackson v. Giurbino*, 364 F.3d 1002, 1006-1007 [California Court of Appeal refused to consider claim of error in prosecutor's argument for lack of objection]; *Rich v. Calderon,* 187 F.3d 1064, 1070 (9th Cir. 1999) [California Court of Appeal "invoked a procedural bar" to refuse consideration of claims of error not objected to at trial].

*Traverse*

1

2

3    But very clearly  the prosecutor did *not* say the presumption had been

4    rebutted; quite the contrary, she said "in essence" that she did not *need* to rebut

5    it because it no longer existed.  And, of course, it does no good to say that the

6    presumption disappears once the State has proved its case beyond a reasonable

7    doubt, because the real question is, when does that happen?  That, of course,

8    only occurs when the jury presents its verdict to the court, and not before then.

9    The prosecutor's statement that "these defendants are no longer presumed

10    innocent," was a clear misstatement of the law, because the presumption of

11    innocence travels with the jury into the jury room and remains there until the

12    jury comes out and delivers its verdict to the court.  Even then, if a juror says it

13    is not his verdict, the presumption goes right back into the jury room as the jury

deliberates again.

14        The State also argues that only the instructions from the court bind the

15    jury.  But that statement is not helpful, because the court's instructions did not

16    tell the jury *when* the presumption of evidence disappeared.  The prosecutor

17    took on that responsibility herself, and got it wrong in the process.  Like in

18    *Mahoney v. Wallman*, 917 F.2d 469, 471 (10th Cir. 1990), where the prosecutor

19    told the jury, "That presumption is not there any more," the prosecutor's

20    remarks constituted an affirmative denial of the defendants' constitutional

rights.  *Id*. at p. 473.

21

22

**III.**

**IT WAS PREJUDICIAL ERROR FOR THE PROSECUTOR TO VOUCH FOR THE CREDIBILITY OF HER WITNESSES.**

23        We pointed out that the law prohibits a prosecutor from personally

24    vouching for the honesty of her witnesses, and that the prosecutor did just that

25    when she said her witnesses "were honest about what happened," and were

26    asked to tell the truth and "[e]ach of them told you that."

27

28

7

*Traverse*

1

2

3    The State concedes the legal principle, but argues that the prosecutor

4    merely said the witnesses were honest in the "context of information they

5    provided" and urged the jury to credit their testimony "based on matters

     within the record."  (State's Points & Authorities, p. 13.)

6    Except that the prosecutor's  remarks in no way commented on the

7    evidence presented within the record—she said her witnesses "were honest"

8    and that is all she said.  There was no reference as to why any particular part of

9    their testimony appeared believable, or any argument about their demeanor.

10   "When the credibility of witnesses is crucial, improper vouching is

11   particularly likely to jeopardize the fundamental fairness of the trial."  *United*

12   *States v. Edwards* 154 F.3d 915, 921 (9th Cir. 1998).  It is quite improper for a

     prosecutor to insinuate to the jury that she knows whether her witnesses were

13   honest or not.  Moreover, her statement to the jury in that regard was not

14   subject to cross-examination.   The law is clear that prosecutors should not

15   vouch for witnesses, and the prosecutor should have known better here.

16

17                                              **IV.**
     **IT WAS ERROR FOR THE PROSECUTOR TO SUGGEST TO THE JURY THAT IF**
18   **THEY ACQUITTED THE  DEFENDANTS THEY WOULD "PREY ON OTHER**
     **PEOPLE IN OUR COMMUNITY," AND THE TRIAL COURT'S STATEMENT AT**
19   **THE CLOSE OF THE PROSECUTOR'S ARGUMENT DID NOT CURE THE**
     **PREJUDICE FROM THE REMARK.**

20   Finally, the prosecutor suggested to the jury that if the jury found the

21   defendants not guilty, they would be sending the defendants back into the

22   community "to prey on other people in our community."  (RT 2501-2501.)

23   This remark clearly cannot be justified, and the court should have dealt

24   with it firmly and promptly, in no uncertain terms.  But the court merely told

25   the prosecutor to "move on."  At the close of the prosecutor's argument the

     court gave what we who are learned in the law could interpret as an

26   admonition, but one cannot say the jury knew what the court meant, and the

27

28                                        8

1

2

3    court *certainly* did not tell the jury to disregard the remark.  Instead, the  court

4    merely told the jury they should not consider "the potential for future harm of

5    these two defendants," and turned to the prosecutor and stated, "That should

6    not have been a part of your argument."  (RT 2503.)  What the court should

     have done was to tell the jury "You must disregard that remark!"[2]

7
     Even if the court had done that, it is questionable the jurors could have
8
     shaken off the heavy mantle of personal guilt draped on them by the
9
     prosecutor.  It is important to remember that the prosecutor did not merely call
10
     the jury's attention to their general fear of crime, which would have been bad
11
     enough.  The prosecutor's statement  went further, and imposed *personal*
12
     *responsibility* on each and every juror for any further assaults—or worse—that
13   might be committed by the defendants if that juror voted "not guilty."

14   Would *any* admonition have unrung that bell?  Would *any* instruction by

15   the court have assured the jurors that they would be able to read the newspaper

16   next week, or next month, without first turning to the crime section to look for

     the defendants' names?  What a burden to place on the jurors!
17

18                                    **V.**
                                 **CONCLUSION**

19   The improper remarks by the prosecutor in her final argument were

20   serious and they were numerous.  The only evidence linking the defendants to

21   the crime was the identification testimony of the eyewitnesses, who had been

22   encouraged by the police dispatcher to identify the men who had been stopped

23   by the police as their assailants.  There were likely dozens of white cars with

24   _____

25       [2]The State says that when the trial court "has instructed the jury to disregard a
     prosecutor's improper statement, it is presumed that the jury followed the admonition."
     (State's Points & Authorities, p. 15.)  That presumption, however, has no applicability
26   here, because the court did *not* tell the jury to disregard the remark.  Nor was the jury
     "immediately" admonished that the remark was improper.
27

                                        9
28                                  *Traverse*

chrome rims and dark windows in Oakland, California on a Sunday night in January, 2005, and the discrepancy in license plate numbers seen on the white car immediately after the assault and on the white car in the Wendy's parking lot could never be explained.  A reasonable juror could have concluded that the identification testimony was flawed.  But that juror could also have easily thought from what the prosecutor said that the defendants had an obligation to tell their side of the story, and that the prosecutor had personal knowledge outside the record that the State's witnesses were honest  and that the defendants were bad men who would harm others if the jury did not lock them up—and that the jurors would be personally responsible if they did.

Under such circumstances, the very least that can be said is that there is grave doubt that the defendants got a fair trial.  If such doubt exists, the court should grant the writ.  *O'Neal v. McAninch, supra* 513 U.S. 432, 437 ["in cases of grave doubt as to harmlessness the petitioner must win"].

Respectfully submitted,


*/s/ Walter K. Pyle*

_____
                Walter K. Pyle

10

*Traverse*