1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT
7
8            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9    SAINT DEJUAN MOORE,
10                Petitioner,                    No. C 07-4736 JSW
11        v.                                     **ORDER DENYING PETITION
                                                 FOR A WRIT OF HABEAS
12    BEN CURRY, Warden,                         CORPUS**
13                Respondent.
                                            /
14
15                        **INTRODUCTION**
16        Petitioner Saint DeJuan Moore ("Petitioner"), a prisoner of the State of California
17   currently incarcerated at California Training Facility in Soledad, California, filed a petition for a
18   writ of habeas corpus ("Pet.") pursuant to 28 U.S.C. § 2254.  This Court ordered Respondent to
19   show cause as to why claims raised in the petition should not be granted.  Respondent filed an
20   answer, a memorandum of points and authorities in support thereof, and exhibits.  Petitioner
21   subsequently filed a traverse.  For the reasons stated below, the petition is denied on the merits.
22                   **PROCEDURAL BACKGROUND**
23        Petitioner was convicted at a jury trial in Alameda County Superior Court of attempted
24   second degree robbery.  Cal. Penal Code §§ 211, 12022.7(a).  He was sentenced to five years
25   and four months in state prison.
26        Petitioner appealed his conviction to the California Court of Appeal, First District,
27   which affirmed the conviction in an unpublished, reasoned opinion filed December 28, 2006.
28   On March 14, 2007, the California Supreme Court denied review.  On September 14, 2007,

**United States District Court**
For the Northern District of California

1    Petitioner filed a petition for a writ of habeas corpus with this Court.

2                           **STATEMENT OF THE FACTS**

3         The facts of the case are summarized from the California Court of Appeal opinion as

4    follows:

5              On Sunday, January 30, 2005, at approximately 8:30 p.m., Sergio Garcia
          drove into the parking lot of a check cashing business at High Street and
6         International Boulevard.  He went into the business to buy some money orders.
          His 22-year-old wife, Claudia Ayala, stayed in the car.  So did her 16-year-old
          sister, Reyna Ayala.  Although it was nighttime, it was "not too" dark—there
7         was "50 percent lighting" from advertising signs.

8              After he bought the money orders, Sergio went back to his car.  As he
          was unlocking the driver's door, a man came up to him from his right side and
9         asked him for his money . . . .

10             Sergio told the man that he did not have any money.  The man lunged at
          Sergio and tried to take his wallet from his left pants pocket.  The two men
11        grappled and fell to the ground.  Sergio positively identified defendant [Maurice
          Gregory] Barrow in court as the man who approached and assaulted him, and
12        was certain of his identification.[1]

13             A second man arrived and starting pulling on Sergio's leg.  Sergio
          described the man as African-American, "a little heavier," wearing a dark shirt
14        with white lettering, and with "an angry face."  Sergio positively identified
          [petitioner-]defendant Moore in court as the second man, and was certain of his
15        identification.

16             Claudia got out of the car and screamed at defendants to leave Sergio
          alone.  She put her hand on Moore's shoulder.  Moore turned and struck Claudia
17        in the face with a closed fist.  Claudia screamed.  Moore hit her again.  Claudia
          positively identified . . . Moore as the second man.

18
               . . . .
19
               Barrow and Moore then left, walking away slowly.  The assault had
20        lasted about a minute and a half.

21             Sergio and Claudia got back into their car, and began to follow
          defendants.  Defendants started to run.  Claudia called 911 on her cell phone and
22        reported the assault, but she was nervous and had trouble communicating with
          the operator.  (Claudia spoke in both Spanish and English.)  Sergio took the
23        phone and spoke to the 911 operator in Spanish.

24             Sergio followed defendants until they got into a parked car.  Sergio
          described the car as a white Cadillac or Pontiac with chrome rims and tinted rear
25        windows.  Sergio identified a photograph of the white car in court.  The white
          car drove in Sergio's direction and stopped.  The driver got out and made a
26        motion as if he were drawing a gun.  Sergio put his car in reverse and backed

27

28        ────────────────────
              [1]  Barrow was convicted alongside Petitioner at trial, but is not a party to Petitioner's
          habeas corpus petition.

                                               2

away.  The driver got back into the white car and drove off.  Sergio followed the white car.

At some point, Sergio lost sight of the white car for about two minutes.

The tape of the 911 call was played for the jury, and depicts Claudia telling the 911 operator that the white car's license plate number was "4WCE642," which the operator later repeated (erroneously) as "4 WTEC42." Sergio took over the conversation with the operator while he was still following the white car.  He first gave the number given by Claudia, but then said that was wrong and gave the license plate number as "2VVM660."

During the chase, Reyna wrote down the license plate number of the white car on an envelope.  There were actually two numbers of the envelope—Sergio identified the bottom number, 2VVM660, as the license plate number he saw on the white car.  He identified the license plate number both from the envelope and from two photographs of the white car.

Sergio explained the discrepancy between the two license plate numbers. The first number was given to him by 16-year-old Reyna, who apparently was nervous and did not read the white car's license plate correctly; the second number, 2VVM660, was the number Sergio himself actually saw on the white car.  Claudia testified that she, Sergio, and Reyna were all nervous while they tried to get the license plate number as Sergio chased the white car.

Sergio stayed on the line with the 911 operator and relayed the locations of the white car as he followed it.  Eventually, a police car met up with him and he pointed out the white car in front of him.  The police car began to follow the white car with its lights activated.  Sergio followed.  After a freeway chase, the police caught up to the white car and stopped it in Emeryville.  Sergio parked nearby.

The police came over to Sergio's car and spoke with Sergio and Claudia. The police took Sergio in a squad car to the place where the white car had been stopped.  Sergio identified two men, the one who had assaulted him (defendant Barrow) and the one who had assaulted Claudia (defendant Moore).  Claudia also made an in-field identification of Barrow and Moore.

. . . .

Defendants did not testify or present any witnesses.  In closing argument, their counsel argued the defense of mistaken identity.  Stressing the existence of two different license plate numbers, counsel argued that Sergio and Claudia had identified the wrong car and were mistaken in their identification of defendants—and that defendants were innocent.

The jury convicted defendants Barrow and Moore of the attempted second degree robbery of Sergio, during which Barrow personally inflicted great bodily injury.  The jury convicted defendant Moore of the assault by means of force likely to produce great bodily injury of Claudia, plus two offenses related to the assault weapon possession.  The trial court sentenced defendant Barrow to five years in prison and defendant Moore to five years four months.

(Resp. Ex. C at 2-5.)  The Court will address additional facts as necessary in the remainder of this Order.

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than the [Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the [Supreme Court]'s decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n. 7 (9th Cir. 2000). If the state court decision only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001). If the state court, relying on state law, correctly identified the

4

1    governing federal legal rules, the federal court must ask whether the state court applied them

2    unreasonably to the facts.  *See id.* at 1232.

3         In his petition for a writ of habeas corpus, Petitioner asserts four claims for relief: (1)

4    that the prosecutor's remark, allegedly alluding to Petitioner's failure to testify, violated

5    Petitioner's Fifth Amendment right to remain silent; (2) that Petitioner's constitutional rights

6    were violated when the prosecutor informed the jury that the presumption of innocence

7    disappears at the close of evidence; (3) that Petitioner's constitutional rights were violated when

8    the prosecutor vouched for the credibility of the government's witnesses; and (4) that

9    Petitioner's constitutional rights were violated when the prosecutor suggested to the jury that

10   Petitioner would prey on others if acquitted.

11                                    **DISCUSSION**

12   **A.    Legal Standard for Prosecutorial Misconduct.**

13        A defendant's due process rights are violated when a prosecutor's misconduct renders a

14   trial "fundamentally unfair."  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v.*

15   *Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of

16   alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

17   prosecutor.").  Under *Darden*, the first issue is whether the prosecutor's remarks were improper;

18   if so, the next question is whether such conduct infected the trial with unfairness.  *Tan v.*

19   *Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutor's comments constitute reversible

20   error only if they "so infect the trial with unfairness as to make the resulting conviction a denial

21   of due process."  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citations omitted).

22        The primary factor in determining the prejudicial effects of misconduct is whether the

23   trial court issued a curative instruction.  When a curative instruction is issued, a court presumes

24   that the jury has disregarded inadmissible evidence and that no due process violation occurred.

25   *See Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987).  This presumption may be overcome if there

26   is an "overwhelming probability" that the jury would be unable to disregard evidence and a

27   strong likelihood that the effect of the misconduct would be "devastating" to the defendant.  *Id.*

28

United States District Court
For the Northern District of California

**B.      The Prosecutor Did Not Commit a *Griffin* Error in Commenting on the Defense's Failure to Present Evidence Consistent with Their Misidentification Theory.**

As part of her closing argument, the prosecutor commented on the defense's failure to call "logical witnesses."  (Reporter's Transcript "RT" at 2495.)  Petitioner argues that, under the circumstances, he is the only one who could contradict the evidence against him.  Therefore, Petitioner claims that the prosecutor's comment was actually "an improper comment on the failure of the defendants to testify, which is prohibited under *Griffin v. California*, 380 U.S. 609 (1965) . . . ."  (Pet. at 3.)

Where a prosecutor on her own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated.  *See Griffin*, 380 U.S. at 615.  However, "[c]ourts have distinguished between those cases in which the defendant is the sole witness who could possibly offer evidence on a particular issue, and those cases in which the information is available from other defense witnesses as well."  *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987).  The distinction maintained by the courts is "between comments about the lack of explanation provided by the *defense*, and comments about the lack of explanation furnished by the *defendant*."  *United States v. Mayans*, 17 F.3d 1174, 1185 (9th Cir. 1994); *see also United States v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995) ("There is a distinction between a comment on the defense's failure to present exculpatory evidence as opposed to a comment on the defendant's failure to testify.").  Even when a prosecutor's remarks do reach the level of error, "courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions."  *Lincoln*, 807 F.2d at 809.

At Petitioner's trial, the prosecutor stated in her closing argument that the defense "failed to call logical witnesses in this case."  (RT at 2495.)  The Court of Appeal determined that the prosecutor's comments were "not *Griffin* error but a legitimate comment on the lack of defense alibi evidence."  (Resp. Ex. C at 15.)  The court found that "[b]y directing the jury's attention to the fact defendant never presented evidence that he was somewhere else when the

crime was committed, the prosecutor did no more than emphasize defendant's failure to present material evidence.  He did not capitalize on the fact defendant failed to testify."  (*Id.* at 15-16 (internal quotations and citations omitted).)

In finding no error, the Court of Appeal's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d).  The prosecutor argued that the defense had not presented a "shred of evidence" to substantiate their misidentification defense.  (RT at 2496.)  She did not mention, or even allude to, the fact that Petitioner did not testify.  In fact, the prosecutor suggested that evidence other than testimony by the defendants could have been presented to corroborate Petitioner's defense – including evidence that "anybody else did the attempted robbery[,]" evidence that "defendant Moore or defendant Barrow were anywhere else on [that] evening[,]" or "evidence, by way of alibi . . . ."  (*Id.* at 2496-97.)  The prosecutor's comments were directed solely on "the defense's failure to present exculpatory evidence . . . ."  *See Mende*, 43 F.3d at 1301.

Petitioner recites the fact that "only two minutes had elapsed between the time the victims lost sight of their assailants' car and the time they spotted the two defendants in a similar car several blocks away."  (Pet. at 3.)  "Under those circumstances," Petitioner argues that "the only *possible* witnesses who could have given evidence as to where the defendants were in the several minutes before the arrest were the defendants themselves."  (*Id.* (emphasis in original).)  Petitioner's argument is unpersuasive.  Petitioner need not have accounted for his presence in the two minutes before he was spotted by the victims in order to establish a misidentification defense.  Rather, Petitioner could have presented a variety of alibi witnesses to confirm that he was not part of the attack on the victims that had happened prior to the chase or that he was not in the car the victims initially spotted and followed.  At his trial, Petitioner did not call any witnesses or present any evidence at all.  Instead, Petitioner defended himself by attacking the credibility of the government's witnesses.  As the prosecutor's remarks were general and limited to commenting on the inadequacies of Petitioner's defense, she did not commit a *Griffin* error.  *See Mayans*, 17 F.3d at 1185.

United States District Court
For the Northern District of California

1    Further, the trial court's curative instruction remedied any misunderstanding about the

2    propriety of the prosecutor's comments.  When a curative instruction is issued, the jury is

3    presumed to have disregarded inadmissible evidence.  *See Greer*, 483 U.S. at 766 n. 8 (1987);

4    *Darden*, 477 U.S. at 182.  After objections by both defense attorneys, the trial court issued an

5    anticipatory admonishment to the jury that any such remark about "the fact that a defendant

6    didn't testify" would be "obviously improper" for the jury to consider because the defendants

7    "have a constitutional right and they have exercised it."  (RT at 2495-96.)  The court also stated

8    that a defendant's failure to testify is "not to be contemplated and it's not fair to argue."  (*Id.*)

9    But, the court noted that it had not "heard what the argument [was] yet."  (*Id.*)  And since the

10   "case law says" that the single statement made by the prosecutor was "fair commentary[,]" the

11   court allowed the prosecutor to continue.  (*Id.*)  The court's instruction negates the finding of a

12   due process violation.  *See Greer*, 483 U.S. at 766 n. 8; *Darden*, 477 U.S. at 182.  Any

13   confusion stemming from the prosecutor's comments was cured.  *See id.*  On this record, the

14   Court of Appeal's decision was not "contrary to, or involved an unreasonable application of,

15   clearly established Federal law[,]" and Petitioner's claim is denied on this issue.  *See* 28 U.S.C.

16   § 2254(d); *see also Lockhart*, 250 F.3d at 1232.

17

18   **C.    The Prosecutor Did Not Misstate the Presumption of Innocence Requirement in
         Her Closing Argument.**

19   Petitioner argues that the prosecutor committed reversible error when she misstated the

20   standard for the presumption of innocence.[2]  "The principle that there is a presumption of

21   innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its

22   enforcement lies at the foundation of the administration of our criminal law."  *Coffin v. United*

23   

24        [2]    Respondent argues that this claim was not properly preserved for appeal
     because trial counsel for Petitioner did not object to the prosecutor's statements.  When a

25   reviewing state court overlooks a procedural default and considers the claim on its merits,
     Petitioner is not barred from raising this claim in a federal habeas petition.  *Walker v. Endell*,

26   850 F.2d 470, 474 (9th Cir. 1987) (citing *Engle v. Isaac*, 456 U.S. 107, 135 n. 44 (1982)).
     Although the Court of Appeal found that this claim was not properly preserved for appeal

27   because neither defense attorney objected to the statement at trial nor requested that the jury
     be admonished, the Court went on to consider the merits of the claim and found no error.

28   (Resp. Ex. C at 16).  Therefore, Petitioner is not barred by his counsel's failure to object.  *See
     Walker*, 850 F.2d at 474.

1   *States*, 156 U.S. 432, 453 (1895).  For this reason, "[d]ue process commands that no man shall

2   lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of

3   his guilt."  *In re Winship*, 397 U.S. 358, 364 (1970) (quoting *Speiser v. Randall*, 357 U.S. 513,

4   526 (1958)).  To prevent any confusion, the United States Supreme Court has explicitly held

5   that the "Due Process Clause protects the accused against conviction except upon proof beyond

6   a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In*

7   *re Winship*, 397 U.S. at 364.

8       In her final argument, the prosecutor stated that the "presumption of innocence is

9   important, and it exists at the beginning of all criminal cases[,]" but that "at the close of

10   evidence, specifically the close of evidence in this case, the presumption of innocence

11   disappears."  (RT at 2500.)  The prosecutor then explained that the defendants should no longer

12   be presumed innocent because she had met her burden and proven them guilty beyond a

13   reasonable doubt.  (*Id.*)

14       The Court of Appeal reasonably found that the prosecutor's statements adequately

15   summarized the law.  The presumption of innocence can be overcome by a showing of "proof

16   beyond a reasonable doubt of every fact necessary to constitute the crime with which [the

17   defendant] is charged."  *In re Winship*, 397 U.S. at 364.  For that reason, the prosecutor did not

18   err by arguing that the presumption of innocence had "disappear[ed]" because she had met her

19   burden and "proven [the defendants] guilty beyond a reasonable doubt."  (RT at 2500.)  Further,

20   juries are presumed to follow the Court's instructions.  *Tan*, 413 F.3d at 1115.   In this case, the

21   jury was not misled because they were properly instructed using CALJIC 2.90, which states, in

22   relevant part, that "[a] defendant in a criminal action is presumed to be innocent until the

23   contrary is proved . . . ."  (RT at 2293.)  Petitioner's claim is denied on this issue because the

24   Court of Appeal's decision was not "contrary to, or involved an unreasonable application of,

25   clearly established Federal law."  28 U.S.C. § 2254(d).[3]

26

27   ───────────
    [3]      Petitioner claims that this Court should consider this issue because his trial
28   counsel's failure to object in this instance constitutes ineffective assistance of counsel.
    Because the Court addressed this claim on the merits, the Court need not consider whether
    Petitioner's trial counsel's failure to object constituted ineffective assistance of counsel.

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1
**D.      The Prosecutor's Statements Regarding the Veracity of the Government's Witnesses' Testimony Were Not Impermissible Vouching.**

2

3          Petitioner argues that his constitutional rights were violated when the prosecutor

4   vouched for the credibility of the government's witnesses.[4]  A prosecutor may not vouch for the

5   credibility of a witness.  *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999).

6   Improper vouching occurs when "the prosecutor places the prestige of the government behind

7   the witness." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980).  A prosecutor places

8   the prestige of the government behind a witness when she makes "personal assurances of the

9   witness's veracity . . . ." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).

10  This kind of misconduct is particularly troubling because "[a] prosecutor has no business telling

11  the jury his individual impressions of the evidence.  Because he is the sovereign's

12  representative, the jury may be misled into thinking his conclusions have been validated by the

13  government's investigatory apparatus." *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.

14  1992).  In *Kerr*, the prosecutor used his closing argument to confide in the jury that *he thought*

15  the government witnesses were "very candid" and "honest."  *Id.* at 1053.  The Ninth Circuit

16  found that, in making those statements, the "experienced United States attorney deliberately

17  introduced into the case his personal opinion of the witnesses credibility" and therefore

18  committed improper vouching.  *Id.*  However, "[t]o warrant habeas relief, the prosecutorial

19  vouching must 'so infect[] the trial with unfairness as to make the resulting conviction a denial

20  of due process.'" *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden*, 477

21  U.S. at 181).  Factors for determining when reversal is required include, but are not limited to:

22

23  Even if the Court were to consider this claim, it would fail.  The Sixth Amendment guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to prevail on an ineffective assistance of counsel claim, 

24  Petitioner must first establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-

25  88.  As already discussed, the prosecutor did not improperly restate the presumption of innocence standard in her final argument.  Therefore, Petitioner's attorney had no reason to 

26  object, and his non-objection was not "deficient." *Id.*

27          [4]      Respondent argues that this claim was not properly preserved for appeal due to trial counsel's failure to object.  Because the California Court of Appeal overlooked this 

28  procedural default and considered the claim on the merits, Petitioner is not barred from raising this claim in his federal habeas petition. *See Walker*, 850 F.2d at 474.

"how much vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; [and] the degree of personal knowledge asserted . . . ."  *Necoechea*, 896 F.2d at 1278.

At trial, Petitioner did not call any witnesses or present any evidence at all.  He defended himself by attacking the credibility of the government's witnesses.  Petitioner's defense attorney made several statements suggesting that the witnesses "didn't get a good look at the people that they had seen," that the key eyewitnesses were biased, and that the witnesses were coached to "get around" the holes in their testimony.  (RT at 2395, 2402-05.)  The prosecutor responded directly to these suggestions in her final argument.  She argued that the defense attorney "went a little far when he said that the witnesses were told what to say," and that there was "no evidence that this was an emotional identification."  (*Id.* at 2479, 2482.)  The prosecutor also stated that "[t]hese witnesses who came in her were honest about what happened . . . . [¶] They were only asked to come in here and tell the truth.  Each of them told you that, and they did their best to do so."  (*Id.* at 2483.)  The Court of Appeal found that these comments were permissible because they were "confined to matters within the record . . . ."  (Resp. Ex. C at 17.)  The court determined that the "prosecutor was properly commenting on the credibility of certain witnesses based upon their testimony and demeanor during trial."  (*Id.*)

The appellate court's decision was reasonable, and it's application of state law was not "contrary to" governing federal law.  *See Lockhart*, 250 F.3d at 1230.  The prosecutor's statements were specific responses to the defense attorney's closing argument.  She did not express a personal belief in the witnesses' veracity.  *See Kerr*, 981 F.2d at 1053.  Further, any residual effect of the prosecutor's statements did not "so infect the trial with unfairness."  *Davis*, 384 F.3d at 644 (citations omitted).  The prosecutor did not suggest that either she or the trial court had any capacity to monitor the truthfulness of the witnesses' testimony.  *See Necoechea*, 986 F.2d at 1278; *contra United States v. Smith*, 962 F.2d 923, 933, 928 (9th Cir. 1992) (finding that the prosecutor vouched "not only on behalf of the government in general but also on behalf of the court specifically" when he said "the government's job is to find the truth, . . . [and] if I did anything wrong in this trial, I wouldn't be here.  The Court wouldn't allow that

1    to happen.").  The jury was also given general instructions on determining the credibility of a

2    witness.  At the outset of closing remarks, the trial court instructed the jury that: "You are the

3    sole judges of the believability of a witness and the weight to be given the testimony of each

4    witness."  (RT at 2288.)  The jury was reminded of this instruction by Petitioner's defense

5    attorney.  (*Id.* at 2401.)

6           The prosecutor's statements did not constitute improper vouching, and any residual

7    confusion was not prejudicial.  Accordingly, the Court of Appeal's decision on this claim was

8    not "contrary to, or an unreasonable application of, clearly established Federal law."  28 U.S.C.

9    § 2254(d).[5]

10   **E.    The Prosecutor Improperly Remarked on the Threat Posed by Defendants to the
             Community if Released, But No Prejudice Resulted from the Error.**

11

12          Petitioner argues that the prosecutor committed prejudicial error by suggesting to the

13   jury that Petitioner would prey on the community if he were acquitted.  A prosecutor may, and

14   should, prosecute with "earnestness" and "vigor."  *Viereck v. United States*, 318 U.S. 236, 246

15   (1943) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).  "But, while he may strike

16   hard blows, he is not at liberty to strike foul ones."  *Id.*  A prosecutor may not use his closing

17   remarks to indulge in "an appeal wholly irrelevant to any facts or issues in the case," for the

18   sole "purpose and effect" of "arous[ing] passion and prejudice."  *Id.* at 248 (footnote omitted).

19          Identifying improper statements is only the first step in establishing prosecutorial

20   misconduct.  *Tan*, 413 F.3d at 1112.  "[A] criminal conviction is not to be lightly overturned on

21   the basis of a prosecutor's comments standing alone," and improper comments will only

22   constitute reversible error if they "affect the fairness of the trial."  *United States v. Young*, 470

23   U.S. 1, 11 (1985); *Johnson*, 63 F.3d at 929.  The first factor in measuring the prejudicial effects

24   _____

25          [5]    Petitioner claims that this Court should consider this issue because his trial
     counsel's failure to object in this instance constitutes ineffective assistance of counsel.
26   However, the Court addressed this claim on the merits and, therefore, need not consider
     whether Petitioner's trial counsel's failure to object constituted ineffective assistance of
27   counsel.  Even if the Court were to consider this claim, Petitioner must establish that
     counsel's performance fell below an "objective standard of reasonableness" under prevailing
28   professional norms.  *Strickland*, 466 U.S. at 687-88.  In this instance, the prosecutor did not
     improperly vouch for the government's witnesses.  Therefore, Petitioner's defense attorney
     was not "deficient" for failing to object.  *See id.*

United States District Court
For the Northern District of California

of misconduct is whether the trial court issued a curative instruction. *Greer*, 483 U.S. at 766 n. 8. Jurors are presumed to follow the court's instructions. *Tan*, 413 F.3d at 1115. In *Tan*, "the prosecutor made an overt appeal to the jurors' passions by arguing that this was a case in which a wonderful human being, . . . a benefactor to his people, was senselessly murdered by crack-smoking gang members who were only interested in getting money for their next drug purchase." *Id.* at 1114. The Ninth Circuit found no due process violation when the jury was properly instructed on five separate occasions – including two instructions using CALJIC 1.00 and CALJIC 0.50. *Id.* at 1116-18.

Other factors which a court may take into account are: (1) the weight of evidence of guilt, *compare United States v. Young*, 470 U.S. 1, 19 (1985) (finding "overwhelming" evidence of guilt) *with United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required after prosecutor's reference to defendant's courtroom demeanor); (2) whether the misconduct was isolated or part of an ongoing pattern, *see Lincoln*, 807 F.2d at 809; (3) whether the misconduct relates to a critical part of the case, *see Giglio v. United States*, 405 U.S. 150, 154 (1972) (failure to disclose information showing potential bias of witness especially significant because government's case rested on credibility of that witness); and (4) whether a prosecutor's comment misstates or manipulates the evidence, *see Darden*, 477 U.S. at 182.

In concluding her final argument, the prosecutor stated "[y]ou jurors are the voice of the community . . . . If you want to acquit [the defendants] and release them back into your community to prey on other people in our community – " at which point both defense attorneys objected. (RT at 2502.) After objections were made off the record, the trial court instructed the prosecutor to "move on." (*Id.*) Shortly thereafter, the trial court cautioned the jury that "the comment made by [the prosecutor] about the potential for future harm of these two defendants should not be considered . . . ." (*Id.* at 2503.) The Court of Appeal found that the prosecutor's remark was improper, but determined that the "almost immediate admonition of the [trial] court cured any error." (Resp. Ex. C at 17.) Therefore, the court found that there was no prejudicial misconduct. (*Id.*)

United States District Court

For the Northern District of California

1        The Court of Appeal reasonably found no prejudicial error.  In addition to providing an

2   almost immediate admonishment to the jury, the trial court admonished the jury at the end of

3   the prosecutor's argument that it should not consider the prosecutor's statement in deliberations.

4   (RT at 2505.)  The trial court also issued general instructions about emotional arguments after

5   the jury was sworn and before closing arguments.  (RT at 1333, 2282.)  On both these occasions

6   the trial court instructed the jury with CALJIC 1.00, which states in relative part; "You must not

7   be influenced by pity for a defendant or by prejudice against him . . . .  You must not be

8   influenced by sentiment, conjecture, sympathy, passion, prejudice, public opinion or public

9   feeling."  (*Id.*)  The jury was also instructed with portions of CALJIC 0.50, which states that

10  "[s]tatements made by the attorneys during the trial are not evidence."  (*Id.* at 1334, 2283.)  As

11  in *Tan*, the trial court's numerous instructions eliminated any risk that Petitioner was denied due

12  process.  *See Tan*, 413 F.3d at 1118.

13       Several other factors support the conclusion that the misconduct did not rise to the level

14  of due process violation.  First, the prosecutor did not misstate or manipulate the evidence.  *See*

15  *Darden*, 477 U.S. at 182.  Second, the statement did not relate to a critical part of the case.  *See*

16  *Giglio*, 405 U.S. at 154.  Third, the misconduct was not part of an ongoing pattern.  *See Lincoln*,

17  807 F.2d at 809.  Although Petitioner claims various other instances of prosecutorial

18  misconduct prejudiced his trial, as already discussed, none of the prosecutor's other statements

19  rose to the level of error.  Lastly, the Court of Appeal reasonably found that "the evidence of

20  guilt is more than substantial."  (Resp. Ex. C at 17.)  The jury convicted Petitioner on a

21  unanimous verdict.  The three victims provided corroborating eyewitness testimony identifying

22  Petitioner as one of their assailants.  The victims testified that Petitioner was found immediately

23  after the crime, in the vehicle that had been identified by the victims.  (RT at 1789.)  Officers

24  testified that Petitioner fled on foot when stopped by police.  (*Id.* at 1398.)  One officer testified

25  that, upon detention, Petitioner asked without prompting "if someone had gotten robbed or

26  something."  (*Id.* at 2063.)  Officers also testified that Petitioner had a loaded firearm, with an

27  extra magazine, in his possession.  (*Id.* at 1407-1408.)  In comparison, the defense offered no

28

1   evidence to substantiate their misidentification defense.  The weight of the evidence of guilt

2   negates a finding of prejudicial misconduct.  *See Young*, 470 U.S. at 19.

3          The prosecutor's statement was in error, but the error did not "affect the fairness of the

4   trial."  *See id.* at 11.  The trial court properly instructed the jury, the prosecutor had not

5   misstated the evidence, the statement did not relate to a critical part of the case, the misconduct

6   was not part of an ongoing pattern, and there was substantial evidence to support the jury's

7   unanimous guilty verdict.  Therefore, the Court of Appeal's determination that the prosecutor's

8   statements were not prejudicial was not an unreasonable application of clearly established

9   federal law and was not based on an unreasonable determination of the facts.  *See* 28 U.S.C. §

10  2254(d).

**CONCLUSION**

12         For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The

13  Clerk shall enter judgment for Respondent and close the file.

14         **IT IS SO ORDERED.**

16  Dated:  September 17, 2009                  _____
                                              JEFFREY S. WHITE
17                                             UNITED STATES DISTRICT JUDGE